NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANTOINE LAVELLE SIMMONS,

    Plaintiff,

v.

COMMISSIONER GARY LANIGAN, et al.,

    Defendants.

Civil Action No. 16-4215 (MAS) (DEA)

OPINION

**SHIPP, District Judge**

This matter comes before the Court upon the Motion for Summary Judgment ("Motion") of Ihuoma Nwachukwu, M.D. ("Dr. Nwachukwu" or "Defendant").[1] (Mot., ECF No. 91.) *Pro se* Plaintiff Antoine Lavelle Simmons ("Plaintiff") opposes the Motion. (Pl.'s Reply Br., ECF No. 98.) For the reasons set forth below, the Court denies the Motion without prejudice.

**I.    PROCEDURAL BACKGROUND**

On or about July 12, 2016, Plaintiff filed a Complaint alleging violations of his constitutional rights and related state law claims against numerous defendants. (Compl., ECF No. 1.) Specifically, the Complaint alleged that Dr. Nwachukwu forced Plaintiff to endure cruel and unusual punishment when Dr. Nwachukwu took away Plaintiff's "bed wedge, medical ice, walking cane, shower chair[, and] mattress that was giv[en]" to Plaintiff by Dr. Hassan. (Compl. 18–19.) The Complaint further alleged that Dr. Nwachukwu failed to properly examine Plaintiff

---

[1] In his Complaint, (ECF No. 1), Plaintiff spelled Defendant's name as I. Nwachkwu. The Court will employ the spelling used in the Motion.

or send him for an MRI. (*Id.*) Following discovery, Dr. Nwachukwu filed the instant Motion.[2] (Def.'s Moving Br.) Plaintiff filed a Response, (Pl.'s Reply Br.), and Dr. Nwachukwu filed a Reply. (Def.'s Reply, ECF No. 102.)

## II. FACTUAL BACKGROUND

This case centers around Dr. Nwachukwu's medical treatment of Plaintiff while he was incarcerated at New Jersey State Prison ("NJSP") between 2014 and 2017. (*See* Pl.'s Dep. 8:2–11, ECF No. 91-1.) Prior to Plaintiff's incarceration, he had been shot in the neck, with bullet fragments remaining in his back. (*Id.* at 12:12–17.) As a result, Plaintiff suffered from back problems. (*Id.*)

On April 29, 2014, Plaintiff was seen by Carol Gallagher, APRN, alleging back pain as a result of his previous gunshot wound. (Def.'s Ex. B 474, ECF No. 93.) On May 1, 2014, Carol Gallagher ordered an x-ray of Plaintiff's chest (AP and LAT). (*Id.* at 473–74.) The results showed no bullet fragments or other foreign bodies. (*Id.*) A subsequent undated medical record[3] indicates that Motrin was ordered for Plaintiff's chronic pain, his gait was observed to be steady, and it was determined that no brace was needed for Plaintiff's left thigh. (*Id.* at 462.)

On August 6, 2015, Plaintiff was seen by James Brewin, APN, who ordered an x-ray of Plaintiff's spine (AP and LAT). (*Id.* at 364.) The results of the x-ray showed no abnormalities, stating "findings are unchanged from 01MAY2014." (*Id.*) On or about August 11, 2015, James

---

[2] The remaining defendants filed a separate motion for summary judgment (ECF No. 96), which was administratively terminated pending additional discovery. (ECF No. 110.)

[3] Defendant presents a date and provider name for this visit. (Def.'s Statement of Material Facts 2, ECF No. 91-3.) The document itself, however, does not contain a date or provider name.

2

Brewin, APN, filled out a Test Form[4] which states: "Duration:1 year" and "Specify: Pt with metallic FB on x-ray." (Pl.'s Reply Br. 37, Ex. A.[5])

A subsequent undated medical record[6] indicates that Plaintiff continued to complain of back pain, and requested a pass for a medical mattress, which was denied. (Def.'s Ex. B 349.) Plaintiff also requested an MRI, but was "advised d/t ret[ai]ned bullet he cannot have an MRI." (*Id.*) On or about September 9, 2015, James Brewin, APN, filled out a Test Form script for Plaintiff which states "Specify: may use back brace as needed for back pain." (Pl.'s Reply Br. 40, Ex. A.)

On December 28, 2015, Plaintiff underwent an initial physical therapy evaluation with Roderick StaRosa, a physical therapist. (Def.'s Ex. B 304–05.) The subjective findings state: "c/o constant pain . . . which is worse at night. He rated the pain as 7/10 pain scale and 9/10 at night." (*Id.* at 305.) The objective findings of the evaluation noted that Plaintiff was wearing a back brace, he was sitting in a slouched position, and there was tenderness in his paraspinals. (*Id.*) Physical therapy was ordered once a week for eight weeks. (*Id.*)

On January 13, 2016, a bed wedge was ordered for Plaintiff by James Brewin, APN, because "PT feels bed wedge would be beneficial to pt." (*Id.* at 293.) On February 10, 2016, Plaintiff had a sick call visit with Dr. Abu Ahsan, M.D., complaining of pain after his physical therapy sessions, "despite [Tylenol with codeine #3 ("T#3")] and ice[.]" (*Id.* at 276.) Dr. Ahsan "changed T#3 to [Tylenol with codeine #4 ("T#4")] . . . for the duration of [physical therapy]

---

[4] The document itself states that it is a "Test Form." Plaintiff identifies the document as a Test Form script. (Pl.'s Reply Br. 44, Ex. A.)

[5] The page numbers associated with "Pl.'s Reply Br." refer to the ECF page numbers.

[6] Defendant presents a date and provider name for this visit. (Def.'s Statement of Material Facts 3.) Once again, the document itself does not contain a date or provider name.

3

only." (*Id.* at 277.) Plaintiff filed a grievance on February 22, 2016, complaining of back pain and his need for an egg crate which Dr. Ahsan did not provide. (Pl.'s Reply Br. 49, Ex. B.) The response to the grievance states: "Dr. Ahsan did not feel that an egg[]crate was medically necessary." (*Id.*) On or about March 7, 2016, Plaintiff was provided a test form script which states: "Specify: may use elevator & may use[] medical ice after PT." (*Id.* at 41.)

On April 4, 2016, Plaintiff had a physical therapy session with Anne Peregmon. (Def.'s Ex. B 249.) The medical notes state that Plaintiff complained that his back pain was getting worse due to coldness in his cell and an inability to exercise in his cell. (*Id.*) Plaintiff was noted to have come in "limping with a slight forward bend posture." (*Id.*) It was also noted that Plaintiff was able to do exercises for six minutes without breaking a sweat. (*Id.*) Plaintiff was ultimately asked to leave the session because he was "demand[ing] for [Peregmon] to write that he should go to the hospital" and failed "to keep a positive atmosphere in PT." (*Id.* at 250.) The notes further indicate that Plaintiff left physical therapy "standing up straight and not limping." (*Id.*) Plaintiff filed a grievance regarding his treatment during the physical therapy session, complaining that his pain was getting worse. (Pl.'s Reply Br. 50, Ex. B.)

On or about April 15, 2016, Plaintiff was provided a test form script for a shower chair. (Pl.'s Reply Br. 39, Ex. A.) On April 27, 2016, Plaintiff had a sick call request for a cane. (Def.'s Ex. B 225.) On or about April 30, 2016, Plaintiff was provided a test form script to be housed on the ground floor. (Pl.'s Reply Br. 38, Ex. A.) Another x-ray was ordered on May 2, 2016, which showed "no significant change compared to 8/5/2015" but found "degenerative narrowing at the mid thoracic levels consistent with osteoarthritis." (Def.'s Ex. B 217.)

On May 23, 2016, Plaintiff had a sick call visit for back pain with Dr. Nwachukwu. (*Id.* at 200.) The notes state "Pt talking very loud and fast saying how he has bullet in his back . . . [a]s

4

per pt the bullet is on his rt upper chest. Pt states he needs egg crate and narco[]tic pain meds for his condition." (*Id.* at 201.) The notes indicate that Plaintiff was sitting in a wheelchair "refusing to be cooperative with exam." (*Id.*) Dr. Nwachukwu's notes further state:

> Reviewed his symptoms with him.
> Reviewed his clinical exam
> Reviewed his record and diagnostic findings.
> Advised pt of the x ray report and that no definitive bullet fragments seen. will repeat x ray.
> Reviewed his PT report.
> Pt has been ambulating freely. There is no clinical indication for all the medical equipment[] he has. Pt was advised the [ones] not clinically indicated will be dc.
> Pt was not happy with this. He threatened with his lawyer advising me that [h]e had wo[]n law suits before.
> Pt was advised that he will be managed as clinically indicated.
> He is to follow up in 2wks.

(*Id.* at 202.) Dr. Nwachukwu ordered an additional x-ray and a follow up visit in two weeks. (*Id.*)

A medical chart note from May 23, 2016, states that Plaintiff had a large bruise on his upper right arm, which Plaintiff explained was due to being beaten by an officer. (Def.'s Ex B 200.) On May 26, 2016, an x-ray was conducted of Plaintiff's thoracic spine (AP and LAT), as well as his elbow (AP and LAT). (*Id.* at 188.) The results of the spine x-ray state "unchanged from 5/2/2016." (*Id.*) The x-ray of the elbow similarly showed no abnormality. (*Id.*)

Plaintiff signed a sworn affidavit on June 17, 2016, in which he described his visit with Dr. Nwachukwu. (Pl.'s Reply Br. 62–63, Ex. B.) The affidavit states that Dr. Nwachukwu discontinued various medical devices:

> [T]his lady maliciously did this for the administration of NJSP to remove[] me from the medical tier 2C North [a]nd she made it for me to force myself to walk on a back that she knows ha[s] spots of [a]rthiriti[s] in my back, then she told me I haven't []ever been shot in the back and [n]o bullet fragments [are] in my back period . . . .

(*Id.*)

James Brewin, APN's July 1, 2016 medical notes state:

> Patient function and activity level discussed with Custody staff on Unit. Custody stated that Mr[.] Simmons goes to yard without difficulty at times, when he requests yard. Pt went out last week per Custody. Patient gait is stable and normal when ambulating to shower, also [] states no difficulty when serving meals getting food. W[hen] Social Work or Medical need to speak with him he has no difficulty getting to door or gate and standing for visit. []Per Custody pt seems "perfectly fine" on unit.

(*Id.* at 166.)

On August 23, 2016, Rutgers University Behavioral Health Care responded to a letter sent by Plaintiff requesting a back brace—the response states: "Your concerns were reviewed by the facility medical director and the statewide medical director, who both agreed that a back brace is not a medical necessity for you at this time." (Pl.'s Reply Br. 52, Ex. B.) Plaintiff filed a grievance on August 28, 2016, complaining of back pain and requesting the bed wedge be returned to him, as well as a larger back brace. (Pl.'s Reply Br. 43, Ex. A.) The response to the grievance states that the chart was reviewed and no back issues were found. (*Id.*)

On October 5, 2016, Plaintiff was seen for a sick call emergency visit by Dr. Nwachukwu, complaining of a bump on his forehead and back pain. (Pl.'s Reply Br. 82–83, Ex. B.) No deformity was found in his back, and Plaintiff was told to continue his pain medication and cleared to return to his unit. (*Id.* at 84.) Plaintiff was seen on that same date by a nurse, for an administrative segregation initial visit. (*Id.* at 85–87.) Plaintiff requested a back brace but was advised that back braces are shown to have detrimental effects, and it would therefore not be reordered. (*Id.* at 87.)

6

Plaintiff was seen on an unknown date thereafter[7] requesting an elevator pass for his back pain and requesting an MRI. (Def.'s Ex. B 11–12.) Plaintiff was advised to continue his medication and that he would be referred to a neurosurgeon for further evaluation. (*Id.* at 12.)

Plaintiff sent a letter to Dr. Ahsan on an unknown date, describing the pain in his back and explaining that the female doctors were not helping him. (Pl.'s Reply Br. 58, Ex. B.) Plaintiff asked to meet with Dr. Ahsan, explaining that he was being helped when he was prescribed medical ice and a back brace by James Brewin. (*Id.*) Health service requests were filed by Plaintiff in 2016 and 2017, requesting a bed wedge and egg crate. (*Id.* at 89–91.)

Plaintiff testified at his deposition that Dr. Brewer had conducted tests on Plaintiff and put him on Tylenol 4s with codeine. (Pl.'s Dep. 12:12–17.) Plaintiff then testified, "Dr. Nwachukwu, she was mad when she came back in. She kept saying that I'm not going to send you out to any outside hospital now for no MRI. I don't believe you. Nothing wrong with your back. I believe you faking it." (*Id.* at 12:18–22.) Plaintiff explained to Dr. Nwachukwu that he was in therapy for almost eighteen months and it was recommended by the physical therapists that he receive an MRI. (*Id.* at 12:23–13:3.) Plaintiff testified that Dr. Nwachukwu responded by taking Plaintiff's back brace and cane away:

> So she was like, okay, I'm going to take your back brace away from you. She said a back brace wasn't good. Now, if the back brace wasn't good, why do I got a back brace on right now?
> 
> She took my back brace from me, and then she took -- they were about to get me a walking cane because I was having problems walking. She took that from me. She said you ain't getting a walking cane. Then she told the officers don't let him use the wheelchair no more.

---

[7] Defendant presents a date and provider name for this visit. (Def.'s Statement of Material Facts 5.) Once again, the document itself does not contain a date or provider name.

7

> Then she removed me from the medical -- they had a medical wing with a number of people with medical problems in it. She moved me off that clearly from there.
>
> . . .
>
> And then she took the -- she had an officer come up there and take the brace from me. And then she kept threatening me and kept telling me I'm going to take you off these Tylenol 4s.

(*Id.* at 13:4–22.)

Plaintiff further testified at his deposition that his back had been healing from the Tylenol 4s and physical therapy. (*Id.* at 18:1–9.) Plaintiff then reinjured his back when he was attacked by officers. (*Id.* at 18:10–24.) Plaintiff explained that Dr. Nwachukwu failed to do anything more than read off Dr. Ivory's notes when she met with him. (*Id.*) Plaintiff stated that he never received a walking cane because of concerns that he would use it as a weapon. (*Id.* at 38:4–17.) Plaintiff also testified that Dr. Nwachukwu took away his bed wedge:

> In therapy -- the therapy lady -- I think her name is -- I forgot the therapy lady's name . . . [s]o she went in the closet, for the bed wedge to elevate my back. She said my back needs to be elevated.
>
> So she went and got . . . Dr. Brewer, and Dr. Brewer wrote the order for the bed wedge for my bed. Then Dr. Nwachukwu, she took it. She took that.
>
> She said -- when she cleared me from the medical wing, she took -- the only way she could clear me from the medical wing is she has to take all my equipment. So she took everything I had, everything I had. And that's the only reason -- the only way they can get me off the medical wing is throw me in MCU.
>
> . . .
>
> [I]n order to get me cleared from the medical wing, she had to take everything. So once she took everything -- she lied and said there's nothing wrong with him and placed me on MCU.

8

(*Id.* at 43:24–44:22.) Plaintiff testified that Dr. Brewer showed Plaintiff his x-rays, explaining that black spots on the x-ray indicated arthritis and metal from a bullet fragment. (*Id.* at 56:10–20.) Finally, Plaintiff testified that his current state of his back, at the time of the deposition, prevents him from going outside because he "cannot stand." (*Id.* at 32:19–22.)

Plaintiff was ultimately transferred out of NJSP to a prison in Arizona. There, he received scripts for a back support belt, shower shoes, a knee sleeve, and side restraints. (Pl.'s Reply Br. 69–73, Ex. B.)

### III. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 422-23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the

non-moving party "may not rest upon the mere allegations or denials of [the] pleading." *Id.* at 322 n.3 (quoting Fed. R. Civ. P. 56(e)). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. ANALYSIS

Dr. Nwachukwu argues that she is entitled to summary judgment on Plaintiff's Eighth Amendment claim as Plaintiff cannot prove that she was deliberately indifferent to his serious medical need. "The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or [intentionally] interfering with the treatment once prescribed.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

To succeed on an Eighth Amendment claim, a plaintiff "must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'" *Id.* (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). The "deliberate indifference standard requires obduracy and wantonness which has been likened to conduct that includes recklessness or a conscious disregard of a substantial risk of serious harm." *Hankey v. Wexford Health Sources, Inc.*, 383 F. App'x 165, 168–69 (3d Cir. 2010) (internal quotation marks and citation omitted).

The Third Circuit has identified a variety of forms that deliberate indifference may commonly take, including: "'where the prison official (1) knows of a prisoner's need for medical

treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 335, 337 (3d Cir. 2016) (quoting *Rouse*, 182 F.3d at 192). A mere "inadvertent failure to provide adequate medical care"—*i.e.*, negligent diagnosis or treatment—will not create an Eighth Amendment claim. *Estelle*, 429 U.S. at 105–06; *Parkell*, 833 F.3d at 337.

### A. <u>Serious Medical Need</u>

Dr. Nwachukwu argues that Plaintiff has not established that he suffers from a serious medical need: "Plaintiff's purported injury . . . is not of the serious nature contemplated by the Eighth Amendment as Plaintiff's medical needs regarding his back injury did not cause Plaintiff a life-long handicap or permanent loss." (Def.'s Moving Br., ECF No. 91-2.) The Court does not agree.

Serious medical needs are "one[s] . . . diagnosed by a physician as requiring treatment or one[s] that [are] so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). In this case, the record evidence establishes that medical professionals provided Plaintiff with multiple x-rays, various scripts for medical equipment, physical therapy, and prescribed him medication for his back pain. The medical notes and grievances establish that Plaintiff consistently complained of serious back pain during the course of his incarceration at NJSP. Plaintiff also testified about his back pain and the care he received in his deposition. These undisputed facts demonstrate that Plaintiff's back problem was significant enough to be diagnosed as needing treatment by medical professionals and, thereby, constitutes an objectively serious medical condition. *See Spruill v. Gillis*, 372 F.3d

11

218, 236 (3d Cir. 2004) (finding, at motion to dismiss stage, that allegations by state prisoner of excruciating back pain, which required medication, and caused prisoner to collapse twice, constituted serious medical need).

B. **Deliberate Indifference**

Having established that Plaintiff's needs were serious, the Court must next determine whether Dr. Nwachukwu acted with deliberate indifference to Plaintiff's serious medical needs. In his response to the Motion, Plaintiff states that Dr. Nwachukwu "delay[ed] and discontinue[d] pain meds and removal of medical equipment bas[ed] upon her malicious thoughts or act[s.]" (Pl.'s Reply Br. 11.) A broad reading of Plaintiff's overall claims presents the argument that Dr. Nwachukwu denied Plaintiff medical care for a non-medical reason. *See Lanzaro*, 834 F.2d at 346 (finding deliberate indifference where "necessary medical treatment is delayed for non-medical reasons").

"[A] deliberate indifference claim premised on delayed [or denied] medical treatment requires a plaintiff to demonstrate that 'the delay [or denial] . . . was motivated by non-medical factors.'" *Miller v. Steele-Smith*, 713 F. App'x 74, 80 (3d Cir. 2017) (citing *Pearson*, 850 F.3d at 537). Examples of non-medical factors may include "desire to punish," "lessen . . . workload," or to save a prison money. *Id.*; *see also Durmer v. O'Carroll*, 991 F.2d 64, 68–69 (3d Cir. 1993) (reversing grant of summary judgment because record established denial of medical treatment was to avoid "burden and expense" to prison). Notably, however, "[t]he lack of an identifiable medical reason explaining a treatment delay does not necessarily mean that the delay was motivated by non-medical reasons." *Id.*

In this instance, accepting Plaintiff's construction of his claim as a denial of medical care type of deliberate indifference claim, there is no presumption that Dr. Nwachukwu acted properly.

*See Pearson*, 850 F.3d at 537 ("[T]he deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim."). "All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

The Court finds that a reasonable jury could conclude that the denial of care by Dr. Nwachukwu—namely, the discontinuation of the medical devices—was motivated by non-medical factors. The record evidence establishes that Plaintiff was prescribed medical scripts for a shower chair, medical ice, back brace, and ground floor pass. In Plaintiff's deposition, he testified that Dr. Nwachukwu told him that she discontinued that medical equipment because it was "the only way she could clear me from the medical wing[.]" (Pl.'s Dep. 44:9–12.) Similarly, in Plaintiff's June 17, 2016 affidavit, Plaintiff described his visit with Dr. Nwachukwu and stated that she took away his medical devices for the "administration of NJSP to remove[] [him] from the medical tier." (Pl.'s Reply Br. 62–63, Ex. B.) This evidence could lead a jury to conclude that Dr. Nwachukwu's medical decisions were motivated by non-medical factors—*i.e.*, a desire to remove Plaintiff from the medical tier—evincing deliberate indifference.

The Court is cognizant of Dr. Nwachukwu's medical note, which states that the medical equipment was not clinically indicated: "[t]here is no clinical indication for all the medical equipments he has. Pt was advised the on[es] not clinically indicated will be dc." (Def.'s Ex. B 202.) This note, however, contradicts Plaintiff's deposition testimony, as to the reason Dr. Nwachukwu discontinued Plaintiff's medical equipment. In such circumstances, the Court is required to resolve this factual dispute in Plaintiff's favor. *See Desvi, Inc. v. Cont'l Ins. Co.*, 968

13

F.2d 307, 308 (3d Cir. 1992) ("In deciding whether there is a disputed issue of material fact, the court must resolve doubts in favor of the non-moving party.") (citation omitted).

Defendant makes the argument that because Plaintiff received considerable medical care—x-rays, physical therapy, and pain medication—Plaintiff fails to establish that Defendant was deliberately indifferent to Plaintiff's medical needs. (Def.'s Moving Br. 8.) Were that the only record evidence, the Court would certainly agree with Defendant. *See Pearson*, 850 F.3d at 535 ("[W]hen medical care is provided, [courts] presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) (complaints about medical care which "merely reflect a disagreement with the doctors over the proper means" of treating the prisoner does not rise to the level of a constitutional violation). That evidence, however, is just a piece—albeit a large piece—of the record. As previously outlined, Plaintiff testified that Dr. Nwachukwu affirmatively stated that she was denying Plaintiff medical equipment to remove him from the medical ward. *See Bushman v. Halm*, 798 F.2d 651, 661 (3d Cir. 1986) (noting that in "the absence of any contrary medical evidence, plaintiff's sworn testimony must be taken as true for purposes of creating a fact issue"). The Court is, therefore, left with a genuine dispute of material fact, ripe for a jury determination.

The Court is aware of case law establishing that a doctor's honest belief that a patient is malingering does not constitute deliberate indifference. *See Todd v. Walters*, 166 F. App'x 590, 592 (3d Cir. 2006); *Price v. Cooper*, No. 94-5142, 1996 WL 467242, at *3 (N.D. Ill. Aug. 12, 1996) ("If medical personnel do not respond to complaints of pain, they are not liable if they honestly believed the inmate was malingering."). Here, Plaintiff testified that Dr. Nwachukwu failed to provide him with an MRI because she believed he was "faking it." (Pl.'s Dep. 12:18-22.) Thus, Dr. Nwachukwu's failure to provide Plaintiff an MRI would not necessarily amount to

deliberate indifference if she honestly believed he was malingering. The Court, however, is still left with a dispute over why Dr. Nwachukwu discontinued Plaintiff's medical equipment. It is possible, of course, that Dr. Nwachukwu wished to remove Plaintiff from the medical ward because she honestly believed he was malingering, or otherwise. Without any evidence in the record, however, establishing Dr. Nwachukwu's precise motives for discontinuing the medical equipment—apart from a single medical note—the Court cannot grant summary judgment in Defendant's favor. Evaluating the record evidence, the Court finds that Plaintiff has raised sufficient disputed material facts to avoid summary judgment.

V. **CONCLUSION**

For the foregoing reasons, Dr. Nwachukwu's motion for summary judgment is DENIED WITHOUT PREJUDICE. An appropriate Order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: July 25, 2019