## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTOINE LAVELLE SIMMONS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER GARY LANIGAN, et al.,<br><br>Defendants. | Civil Action No. 16-4215 (MAS) (DEA)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants'[1] Motion seeking Summary Judgment in this prisoner civil rights matter. (ECF No. 137.) Plaintiff filed a response to the Motion (ECF No. 148), to which Respondents replied. (ECF No. 171.) Also before the Court is Plaintiff's purported Motion for Summary Judgment. (ECF No. 172.) For the following reasons, Defendants' Motion is granted in part and denied in part, and Plaintiff's Motion is denied.

I. **BACKGROUND**

On or about July 12, 2016, Plaintiff filed a complaint in which he sought to raise a litany of complaints against a number of employees of the New Jersey Department of Corrections arising out of a number of alleged incidents between April and July 2016 in which Plaintiff alleges he was attacked, threatened, left without recreation time or the ability to use the restroom, and subjected

---

[1] Throughout this Opinion, this Court uses "Defendants" generally to refer to the moving Defendants, all of whom are employees of the New Jersey Department of Corrections. This includes Defendants Johnson, Morales Pitre, Taylor, Cortes, Haywood, Delarosa, Bullock, Estrada, Patterson, Garneish, Borg, Sherrod, Collins, Alaimo, DeJesus, DeFazio, and Bonanno.

to planted evidence and false disciplinary charges. (ECF No. 1.) Plaintiff also alleged that he was denied Due Process during two disciplinary hearings – the first relating to him being charged with the improper use of prescribed medication arising out of his cell being searched and a partially dissolved pill being discovered which Plaintiff believes was planted, and the second arising out of a guard finding a "sharpened" chicken bone in Plaintiff's cell which Plaintiff also contends was planted by guards. (*See* April 10 2016 Disciplinary Report, Ex. E to Defs.' Motion, ECF No. 137-5 at 34, July 1, 2016 Disciplinary Reports, Ex. F to Defs.' Motion, ECF No.137-6 at 2-6, 18-22.) Plaintiff further alleged that he was denied a haircut between April and July 2016, that various pieces of his property were lost, stolen, or given away by guards on several occasions, and that certain guards improperly seized a back brace he possessed after a prison doctor allegedly improperly determined that he no longer needed them. (*See* Pl.'s Br. In Opp'n, ECF No. 148 at 17-19.)

As the majority of Plaintiff's claims are either unexhausted or fail to set forth a valid basis for relief for the reasons discussed below, this Court need only add a brief elaboration regarding Plaintiff's disciplinary proceedings. On April 10, 2016, guards conducted a search of Plaintiff's cell and reported finding a "[r]ound white pill wrapped in white paper hidden inside a rol[l] of [t]oilet [p]aper," which was confiscated. (April 10, 2016 Disciplinary Report 34.) As Plaintiff had been prescribed Tylenol #4, a pain reliever which contains codeine, this pill was believed by jail officials to be one of these pills which Plaintiff was provided regularly by medical staff. (*Id.*) Plaintiff was charged with a misuse of authorized medications for allegedly secreting the pill. (*Id.* at 36.) He appeared for an initial hearing on April 13, 2016, initially with an inmate counsel substitute that he later refused, requested that he be permitted a polygraph that the hearing officers investigate several inmates who allegedly heard threats to Plaintiff by the officers who found the pill, and that the officers interview several prison staff to whom Plaintiff had complained regarding

the officers in question previously but who were not present at the time of the search. (*Id.* at 36-45, 58-60.) Investigators spoke with the other inmates, who provided little in the way of useful, non-hearsay information, but the hearing officer declined to permit the interview of the other prison staff members to whom Plaintiff had previously complained as they were not present for the search and could provide no relevant testimony regarding what happened during the search – i.e., as to whether the pill was indeed planted in Plaintiff's cell. (*Id.* at 36-37, 52, 60-63.) The prison administrator also denied Plaintiff's request to be polygraphed as "no issues of credibility or new evidence" which would warrant a polygraph had presented themselves. (*Id.* at 53.)

On April 22, 2016, Defendant Hearing Officer Cortes found Plaintiff guilty of the disciplinary infraction and imposed upon him 120 days loss of credits, 120 days of administrative segregation, 30 days loss of certain television, radio, and phone privileges, and 15 days loss of recreation privileges. (*Id.* at 71.) Plaintiff was provided with a statement of reasons by the officer, in which Cortes explained that Plaintiff's request to interview jail staff not present had been denied as those individuals were not present and could provide no relevant testimony, the staff reports indicated that the pill was found in Plaintiff's cell, that Plaintiff had failed to rebut or discredit those reports, and that the testimony of other inmates had been either irrelevant or contained only hearsay. (*Id.*) Plaintiff appealed, arguing that he had been denied the right to confront the witnesses against him notwithstanding the hearing officer having noted that Plaintiff did not request confrontation, that Plaintiff was improperly denied some requested witnesses and a polygraph, and that he received an excessive punishment. (*Id.* at 73-78.) On April 22, 2016, Assistant Superintendent Robert Chetirkin upheld the imposed punishment and rejected Plaintiff's appeal, finding that Plaintiff had received the required procedural safeguards and the charges were well supported by the "preponderance of evidence." (*Id.* at 79.)

Plaintiff's second disciplinary hearing arises out of the finding of a "sharpened" chicken bone in Plaintiff's cell on July 1, 2016. (July 1 2016 Disciplinary Reports 18.) On that date, during a verbal argument between Plaintiff and a guard, the guard entered Plaintiff's cell after Plaintiff allegedly threatened him and found a "chicken bone sharpened to a point in his cell." (*Id.* at 8.) Plaintiff was charged with threatening and officer and for possession of the chicken bone, of which he was ultimately found guilty of verbal abuse, a downgraded charge from the threat charge, and for possession of the bone on July 7, 2016. (*Id.* at 4-6, 18-22.) The hearing officer responsible for this decision was Defendant Morales Pitre. (*Id.* at 13.) Plaintiff appealed, arguing that he was again denied his confrontation rights which was covered up when the officer stated that he did not request it in her decision, that the hearing officer refused to take some of his evidence in the form of certifications and affidavits, by discounting the testimony of one proposed witness as that witness was housed too far away to hear what occurred, and by not permitting him to request a polygraph. (*Id.* at 14-16, 30-35.) Plaintiff appealed, and the disciplinary findings were upheld by assistant superintendent Chetirkin on July 18, 2016, after this matter was filed. (*Id.* at 17, 37.)

## II. LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view

4

the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

### III. DISCUSSION

#### A. Exhaustion

Defendants first argue in their Motion that most of Plaintiff's claims should be dismissed because they contend he failed to properly exhaust his claims through the proper administrative channels before filing suit in this Court. Pursuant to 42 U.S.C. § 1997e, before a prisoner may file a civil rights suit challenging "prison conditions," he is required to exhaust all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Indeed, a prisoner is required to "exhaust administrative remedies even where the relief sought – [such as] monetary damages – cannot be granted by the administrative process." *Id.; see also Booth v. Churner*, 532

5

U.S. 731, 734 (2001). Where an administrative procedure is available, a plaintiff seeking to challenge prison conditions via a federal civil rights action must fully and properly exhaust his administrative remedies prior to filing suit, and exceptional circumstances will not excuse a plaintiff's failure to exhaust his claims. *Ross v. Blake*, --- U.S. ---, ---, 136 S. Ct. 1850, 1856-57 (2016). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Booth v. Churner*, 206 F.3d 289, 298 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001).

As all of Plaintiff's claims in this matter arise out of incidents which occurred as part of Plaintiff's prison life, they are all subject to the exhaustion requirement of § 1997e. *Porter*, 534 U.S. at 532. As Plaintiff has not shown that his administrative remedies were unavailable, and as Plaintiff's frequent filing of various grievance and inquiry forms indicate that those remedies were available to him, his claims must be dismissed unless he properly exhausted them prior to filing suit. *Id.*; *see also Garrett v. Wexford Health*, 938 F.3d 69, 84 (3d Cir. 2019) (complaint will be deficient and warrant dismissal if the plaintiff is a prisoner when the complaint is filed and has not *already* exhausted his administrative remedies).[2] "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. To properly exhaust his claims, a prisoner must therefore seek all available administrative remedies and at least substantially comply with the applicable

---

[2] Although a plaintiff may cure an exhaustion defect by filing an amended complaint after being released from prison, and may even be able to cure exhaustion defects in an original complaint by filing an amended complaint *after* he finishes the exhaustion process, *see Garrett*, 938 F.3d at 84, Plaintiff in this matter never filed an amended complaint, and was clearly a prisoner at the time of filing his original complaint, and the exhaustion question thus turns on whether Plaintiff's claims were filed *before* his suit was filed in this matter on or before July 12, 2016. (*See* ECF No. 1.)

6

administrative rules and regulations imposed by the prison in which he is detained. *Id.* at 90-103; *Small v. Camden Cnty.*, 728 F.3d 265, 272 (3d Cir. 2013) (completion of the administrative review process requires "substantial" compliance with the prison's grievance procedures). To determine whether a prisoner has properly exhausted his claims, a court must therefore look to the administrative grievance regime of the prison facility in question to determine what steps are required to properly exhaust a claim and determine whether the plaintiff substantially complied with these steps. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

Exhaustion is a threshold issue affecting a plaintiff's entitlement to relief, and it is therefore the Court, and not a jury, that determines whether a plaintiff has properly exhausted his claims, including in those matters where the Court is required to resolve factual disputes. *Small*, 728 F.3d at 269-71. Where the defendants provide copies of the prisons records regarding submitted grievance forms which indicate that proper exhaustion was not completed, a plaintiff may not defeat summary judgment through conclusory, self-serving affidavits which "vaguely insist[] that he 'appealed numerous responses' that 'vanished after being properly submitted and/or filed.'" *Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018). Where a plaintiff instead provides direct sworn statements or testimony which "set[] forth specific facts that contradict [the defendants'] evidence and establish a genuine issue of material fact," a district court may not settle such a direct evidential dispute without first providing the parties notice and an opportunity to respond or holding a hearing on the matter. *Id.* at 208-211.

In her certification, Amy Emrich, the Assistant Superintendent of New Jersey State Prison and the Inmate Remedy System Coordinator for the prison provides the following information regarding proper grievance procedure at the prison in effect during the time frame of Plaintiff's claims. (*See* Emrich Certification, ECF No. 137-8.) Although prisoners such as Plaintiff could file administrative grievances using paper forms beginning in September 2015, the prison began

7

using the JPAY system, through which prisoners can file inmate inquiries, inmate grievances, and grievance appeals. (*Id.* at 2.) This system also saves all filed grievance forms, and staff are unable to delete these filings. (*Id.* at 3.) When using the prison's grievance system, prisoners should file inquiry forms when making "routine inquiries," but must use grievance forms "when there are circumstances or actions thought to be unjust or grounds for complaint, or when the inmate is not satisfied with the response" to an earlier inquiry form submission. (*Id.* at 2.) Grievance forms must be submitted within ten days of the incident at issue or within ten days of any allegedly inadequate response to an inmate inquiry form. (*Id.* at 2-3.) Inmates generally receive a response to a grievance within thirty days, and may thereafter file an appeal within ten days of receiving a response. (*Id.* at 3.) "To properly exhaust his administrative remedies, an inmate must appeal a response to a 'Grievance' Form." (*Id.*) As inquiries may not be directly appealed, and a grievance serves as a mechanism through exhausting issues initially raised in an inquiry, only completion of a grievance form and an appeal of that grievance will complete the exhaustion process. (*Id.* at 2-3.)

Defendants concede that Plaintiff properly exhausted his lost or stolen property claims, his Due Process claims related to two disciplinary hearings held in April and July 2016, his claim that he was denied a haircut between April and July 2016, and his claim regarding the taking of his back brace and other medical equipment at the direction of medical staff. Defendants further admit that Plaintiff properly exhausted grievances related to his claim that he was denied recreation starting in mid-May 2016, but that he did not file his grievances related to this issue until August 2016, after he filed suit in this matter. Defendants also acknowledge that Plaintiff filed and appealed grievances related to his being forced to take his recreation time in a medical recreation yard where he could not use the restroom, though they argue that these grievances were not specific enough as to the Defendants involved and the facts he alleges in his complaint in this matter.

8

Defendants argue that Plaintiff failed to file and appeal grievances as to his remaining claims, and that Plaintiff's denial of recreation claim and all of his remaining claims not discussed above should be dismissed as he failed to exhaust his claims before filing suit in this matter.

Having reviewed Plaintiff's extensive grievance record, it appears that during his time in New Jersey State Prison, Plaintiff filed several hundred inquiry forms, and a significantly smaller number of grievance forms. The record further indicates that Defendants are correct that, prior to filing suit in this matter, Plaintiff only fully exhausted as to the handful of claims discussed above. Although some of his other claims were the subject of inmate inquiry forms, or were the subject of grievance forms filed *after* Plaintiff's complaint was received by this Court, it does not appear that Plaintiff exhausted any of his other numerous claims prior to filing suit in this matter.

In response to Defendants' exhaustion arguments, Plaintiff in his reply brief argues that the Court should consider additional paper grievance and inquiry forms he has provided, that he should be excused from exhausting his claims due to special circumstances, and that the Court should not dismiss his claims based on his vague and conclusory allegation that there are other paper or hidden inquiry and grievance forms which were either destroyed, misplaced, or have been purposely obfuscated by Defendants. Initially, as noted above, the Court must reject Plaintiff's "special circumstances" argument as the Supreme Court rejected any such approach to exhaustion. *See Ross*, 136 S. Ct. at 1856-57. The Court further notes that it has reviewed and considered the paper and JPAY forms Plaintiff has provided and finds that the forms are all either copies of forms Defendants provided, are inquiry forms which cannot complete the exhaustion process, do not appear to have been submitted and were not appealed as the sections of the form relating to such

an appeal are not filled out, or were filed after Plaintiff filed his complaint in this matter and thus are irrelevant to the question of whether Plaintiff properly exhausted.[3]

This Court is thus left with Plaintiff's contention that he did exhaust his remaining claims. Plaintiff, however, provides no more than conclusory allegations on this fact in the form of assertions that there are other forms in the ether that may have been lost or hidden without any specific details as to which of his claims these alleged missing grievances concerned, and a blanket assertion in his brief that he filed grievances as to all of his claims. Although he does not discuss it in his response to the Motion, the Court notes that Plaintiff made other relevant statements at his deposition – including statements such as that he filed "so many grievances" without further detail, (*see* Pl.'s Dep. 72:11, 98:1, ECF No. 137-4 )[4], a statement to the effect that he "filed a grievance" regarding his being assaulted to which he received a response, (*id.* at 77:20-21), and a blanket statement that Plaintiff filed grievances about "everything." (*Id.* at 102:21-25.)

While Plaintiff's vague and blanket statements regarding exhaustion are the sort of self-serving statements that are insufficient to create a genuine issue of material fact sufficient to defeat

---

[3] Several months after the parties had completed the motion in this matter, Plaintiff filed an unauthorized sur-reply. (ECF No. 174.) Defendants in turn submitted a letter brief arguing that this Court should refuse to consider the document as it was filed without leave of the Court. (ECF No. 175.) Because Plaintiff did not request or receive leave of court before filing this document, it is not properly before the Court and this Court need not and will not consider it. *See* Local Civil Rule 7.1(d)(6) ("[n]o sur-replies are permitted without permission of the Judge . . . to whom the case is assigned"); *see also Young v. United States*, 152 F. Supp. 3d 337, 352 (D.N.J. 2015) ("[c]ourts of this district generally will not permit consideration of sur-replies where no permission has been sought or granted.") Even if this Court were to consider this filing, however, the additional grievance and inquiry forms Plaintiff submits are either copies of ones already supplied by the Court, irrelevant to the current matter, do not show that any additional claims were exhausted, or were filed *after* Plaintiff filed suit in this case and thus cannot serve to show that he exhausted his claims *prior* to filing suit as required by § 1997e. Thus, Plaintiff's sur-reply would not change the outcome of this matter had Plaintiff sought leave before filing it.

[4] These page numbers refer to the page numbers assigned by the Court's ECF docket system rather than the page numbers contained in the deposition document itself.

a motion for summary judgment, *see Paladino*, 885 F.3d at 208, Plaintiff's deposition testimony does provide one specific allegation which is relevant to the exhaustion matter – his statement that he did file a grievance regarding his being assaulted by Defendants Patterson and Bullock in May 2016 while another guard, Bray, observed. (Pl.'s Dep. at 75:23-77:25.) Plaintiff also stated that he received a response to this report, and it resulted in an SID investigation. The documents provided by Defendants, however, confirm what Plaintiff stated during his deposition – he did file an inmate *inquiry* form regarding the May 23 assault, (*see* Ex. 2 to Defs.' Motion, ECF No. 137-9 at 48), that inquiry did receive a response, and the prison did conduct an investigation as a result. Thus, Plaintiff's statement at his deposition does not create a genuine issue of material fact as to the exhaustion of this claim – it fully aligns with the inquiry form provided by Defendants in this matter, and the evidence regarding the resulting investigation Defendants provided. Unfortunately for Plaintiff, however, an inmate inquiry form is insufficient to properly exhaust a claim – only a grievance form which has been properly filed will do so. (*See* Emrich Certification ¶ 13.) As Plaintiff filed an inquiry form, and not a grievance, he did not properly exhaust this claim prior to filing suit, and it, too, must be dismissed for lack of exhaustion. As there are no genuine disputes of material fact as to the issue, and as it is clear that Plaintiff did not fully and properly exhaust the majority of his claims in this matter, all of Plaintiff's claims other than his claims related to the denial of haircuts, the theft or loss of his personal property, the taking of his medical brace, the denial of bathroom access during recreation time, and his Due Process disciplinary hearing claims must be dismissed for failure to exhaust administrative remedies prior to filing suit in this matter.

## B. Plaintiff's haircut related claims

Defendants next argue that Plaintiff's claim that he was denied a haircut for a period of approximately three months between April 2016 and the filing of his complaint in this matter fails to reach the level of a constitutional violation and that they are entitled to judgment as a matter of

11

law on that claim. While the Eighth Amendment requires prison officials to "provide humane conditions of confinement" and prison officials must therefore "ensure that inmates receive adequate food, clothing, shelter and medical care," *see Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994), there is no "clearly established constitutional right[] to a haircut." *Williams v. Del. Cnty. Bd. Of Prison Inspectors*, No. 17-4348, 2018 WL 3235788, at *8 (E.D. Pa. July 2, 2018); *see also Stevenson v. Lubbock Cnty. Sheriff's Dep't*, 3 F.3d 440, 440 (5th Cir. 1993) (denial of a haircut "falls far short" of establishing a constitutional violation). Plaintiff's denial of haircut for a few months in 2016 therefore fails to amount to a constitutional violation, and Defendants are entitled to judgment as a matter of law as to his § 1983 claim premised on that denial.

## C. Plaintiff's Lost or Stolen Property Claims

Defendants argue that they are entitled to judgment as to Plaintiff's claims that various pieces of his property or personal food stores were improperly lost, stolen, or given away by several of the Defendants as Plaintiff had a meaningful post-deprivation remedy available to him and he may not proceed with a claim on this basis under § 1983. "Where a state actor deprives an individual of property without authorization, either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. *See Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*, [451 U.S. 527, 543-44] (1981); *overruled in part on other grounds, Daniels v. Williams*, [474 U.S. 327] (1986)." *Love v. New Jersey Dep't of Corr.*, Civil Action No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015). The State of New Jersey has provided Plaintiff with meaningful post-deprivation remedies in the form of both the New Jersey Tort Claims Act, *see N.J. Stat. Ann.* § 59:1-1, *et seq.*; *Love*, 2015 WL 2226015 at *5, and the prison's inmate lost, damaged, or destroyed property system. *See, e.g., N.J. Admin. Code* § 10A:2-6.1 (establishing process for seeking damages for lost, damaged, or destroyed property); *see also Pressley v. Huber*,

562 F. App'x 67, 70 (3d Cir. 2014) (state tort claim and prison damaged property grievance system provide a sufficient post-deprivation remedy). Because Plaintiff had adequate post-deprivation remedies available to him – and as it appears he even attempted to make use of at least one such remedy by filing a prison lost or damaged property claim – the loss, theft, or giving away of Plaintiff's property fails to set forth a basis for relief under § 1983, and Defendants are therefore entitled to judgment as a matter of law as to Plaintiff's property claims.

### D. Plaintiff's Disciplinary Due Process Claims

Defendants also contend that they are entitled to summary judgment as to Plaintiff's Due Process claims related to his two disciplinary proceedings as they believe Plaintiff received all the process that he was due, notwithstanding Plaintiff's claim that the charges against him were false or involved planted evidence. "[T]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." *Poole v. Mercer Cnty. Corr. Ctr.*, No. 11-3730, 2012 WL 694689, at *2 (D.N.J. Feb. 29, 2012); *see also Mimms v. U.N.I.C.O.R.*, 386 F. App'x 32, 36 (3d Cir. 2010) (the "filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges"); *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). At a prison disciplinary hearing, the Due Process Clause requires that a prisoner be afforded written notice of the charges against him and no less than 24 hours within which to prepare his defense and obtain any evidence, a written statement by the fact finder as to the evidence relied upon and the reasoning behind his decision, and an opportunity to call witnesses and present documentary evidence in the plaintiff's defense when doing so is not unduly hazardous to institutional safety or the correctional facility's goals. *Poole*, 2012 WL 694689 at *2; *see also Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974). New Jersey state law has in turn entitled prisoners subject to disciplinary hearings further procedural protections including written notice and at least 24 hours to prepare for their hearing, an impartial

13

tribunal which may include Department of Corrections staff, the right to call witnesses and present documentary evidence subject to limitations based on undue hazards to institutional safety or correctional concerns, a limited right to the confrontation and cross-examination of witnesses subject to safety and security concerns, a right to a written statement of the evidence relied upon by the tribunal and a statement of reasons supporting the tribunal's decision, and the assistance of counsel substitute which includes the right to be read the charges where the inmate is illiterate or is unable to prepare his own defense. *See Avant v. Clifford*, 67 N.J. 496, 525-33 (1975); *see also Ries v. Dep't of Corr.*, 933 A.2d 638, 641 (N.J. App. Div. 2007) (citing *Avant* as setting forth the "applicable norms of due process" in New Jersey for prison disciplinary hearings).

Turning first to Plaintiff's April 2016 hearing, Plaintiff contends that he was denied Due Process because he was denied the right to confront his accuser, he was denied a polygraph, and he was not permitted to obtain statements from prison staff not present when the search of his cell which produced the pill occurred. Turning first to the polygraph issue, while it is clear that there is no federal constitutional right to a polygraph in prison disciplinary hearings, the New Jersey Administrative Code does provide prison inmates with the ability to request that one be conducted. *See, e.g., Niblack v. Miglio*, No. 16-747, 2017 WL 772906, at *5 (D.N.J. Feb. 28, 2017). This, however, does not confer upon Plaintiff's an unmitigated state created right to a polygraph examination. *See Ramirez v. Dep't of Corr.*, 382 N.J. Super. 18, 23 (App. Div. 2005). Instead, the administrative code provides a "limited right" to request a polygraph, which a prison administrator may deny based on his discretion. *Id.* at 23-24. In using that discretion, the administrator may deny a polygraph request where doing so will not "impair the fundamental fairness of the disciplinary proceeding." *Id.* at 24. A polygraph is thus only required under state law where there is evidence of "inconsistencies in the [corrections officers'] statements or some

14

other extrinsic evidence involving credibility . . . such as a statement by another inmate or staff member on the inmate's behalf." *Id.*

In this matter, the reports of the involved officers and the physical evidence provided to the hearing officer – including photos of the confiscated pill and Plaintiff's having been prescribed Tylenol #4 – all appear to corroborate one another, and Plaintiff provided no extrinsic evidence which would have conflicted with those statements. Instead, the only evidence he provided that conflicted with the officers' testimony was his own – which appears based on *Ramirez* to be insufficient under state law to trigger an entitlement to a polygraph. Plaintiff was therefore not entitled to a polygraph, and the denial of such during his April 2016 hearing did not result in a denial of Due Process. Similarly, Plaintiff was not denied Due Process when the hearing officer declined to interview staff who were not present during the search and who could provide no more than a recitation of a history of animosity between Plaintiff and the guards which Plaintiff and some of his witnesses had already placed into evidence.

Turning to the question of confrontation, however, there is genuine dispute of fact over whether Plaintiff sought to confront the guards against him – Plaintiff claims he did seek it, the hearing officer stated that he didn't. If Plaintiff did request a confrontation with the officers who accused him and was denied that request without an explanation as to why confrontation was not available as a result of prison security or safety concerns, that would amount to a potential violation of Plaintiff's state created Due Process rights. *Avant*, 67 N.J. at 525-33. Thus, while this Court must deny Defendants motion as to Plaintiff's April 2016 disciplinary hearing. Because there are only two individuals directly involved in this Due Process issue – Defendant Cortes who acted as the hearing officer and Defendant Chetirkin who decided Plaintiff's appeal, this Court will grant summary judgment as to this claim to the extent that Plaintiff sought relief based on this claim

15

from any other Defendant and dismiss any such claim against any Defendant other than Chetirkin and Cortes.[5]

Turning to Plaintiff's July 2016 hearing, Plaintiff again argues that he was denied Due Process because he was not permitted to confront the witnesses against him, because the hearing officer refused to accept his evidence, and because he was denied the right to request a polygraph. As the evidence in this matter clearly creates a genuine issue of material fact as to whether Plaintiff requested to confront the witnesses against him, whether he requested a polygraph and was denied one without the matter being properly referred to the prison administrator, and whether Plaintiff was denied the opportunity to submit his defense evidence at his hearing, and is it is clear he is *at least* entitled to a limited confrontation right, the right to submit his evidence, and *may* be entitled to at least request a polygraph from the administrator, this Court cannot find that Defendant Morales Pitre is entitled to summary judgment at this time, and Defendants motion is denied as to Plaintiff's Due Process claim against her. As Defendant Chetirkin did not decide Plaintiff's appeal until after this matter was filed, however, any Due Process claim Plaintiff against him is outside the scope of this matter and must be dismissed as such. *See, e.g., Aruanno v. Corzine*, 687 F. App'x 226, 229 n. 5 (3d Cir. 2017) (a plaintiff may not seek damages based on acts which occur

---

[5] In deciding Defendant's motion to dismiss in this matter, this Court dismissed Plaintiff's false or planted evidence claims as they were barred by the doctrine pronounced in *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* ECF No. 47 at 5-6.) This Court declined to dismiss Plaintiff's disciplinary Due Process claims under *Heck*, however, on the theory that, depending on how severe the alleged Due Process violation, it might not necessarily imply the invalidity of Plaintiff's disciplinary hearings and associated lost credits. (*Id.* at 47.) Given that decision, Defendants did not argue *Heck* in their summary judgment motion. Because this Court finds that there is a genuine issue of fact as to Plaintiff's disciplinary Due Process claims at least insomuch as Plaintiff may have been denied a right to confront the witnesses against him, this Court will permit Defendants to file a motion for summary judgment within thirty days addressing whether *Heck* would bar this claim in light of the full state of the record evidence before this Court. Defendants may also address the applicability of *Heck* to Plaintiff's July 2016 disciplinary hearing claims should they choose to file such a motion.

16

after the filing of the complaint without formally amending or supplementing his complaint to raise those claims after they occur). Likewise, because Plaintiff has not connected any other Defendant to this claim other than Chetirkin or Morales Pitre, any other Defendant against whom Plaintiff sought to raise this claim is entitled to judgment for lack of personal involvement in the hearing or appeal, and any claim against Defendants other than Morales Pitre or Chetirkin is dismissed.

## E. Plaintiff's Medical Brace claim

Defendants next contend that they are entitled to summary judgment as to Plaintiff's claim regarding the taking of his medical back brace by Defendants Patterson and DeFazio on May 24, 2016, and the alleged resulting loss of that brace both because they believe Plaintiff may have still had the brace after these officers saw him, a point Plaintiff disputes, and because it is barred insofar as it is a property-related claim for the reasons discussed above, and because the two officers were entitled to rely on the order of Dr. Nwachukwu to take the brace to the extent that Plaintiff's medical brace claim is construed as deliberate indifference to his medical needs. To the extent that Plaintiff's back brace claim amounts to a claim that his property was improperly seized and lost, Defendants are correct that they are entitled to summary judgment for the reasons recounted above – Plaintiff had access to adequate post-deprivation process to address the loss and cannot proceed on a § 1983 claim in lieu of using that process. *Love*, 2015 WL 2226015 at *5.

Defendants are also entitled to summary judgment to the extent that Plaintiff's back brace claim was intended as a deliberate indifference to medical needs claim. As Plaintiff made clear in his complaint and at his deposition, and as discussed in this Court's opinion addressing the doctor's summary judgment motion, (*see* ECF No. 120 at 5-6), the doctor ordered that Plaintiff's medical equipment, including his back brace, which was "not clinically indicated" would be taken from him on May 23, 2016. (*Id.* at 5-6.) As the Third Circuit has explained, "absent a reason to believe

17

(or actual knowledge) that prison doctors or their assistance are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference" as "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" when he is being treated by a prison physician. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Here, the doctor ordered the taking of Plaintiff's medical equipment, including his brace, and the officers followed that order in taking the brace from Plaintiff, and Plaintiff has provided nothing to indicate that the officers in question should have or did know that the doctor was acting improperly in determining that Plaintiff's back brace was unnecessary, and they are therefore entitled to judgment as a matter of law to the extent Plaintiff seeks to hold them liable for deliberate indifference to his medical needs in allegedly taking his brace. *Id.* Because it is clear that Defendants are entitled to judgment as to this claim, this Court need not and will not address the factual dispute over whether the brace was actually seized on May 24 or at some later time.

### F. Plaintiff's Recreation Related Claim

Defendants also argue that they are entitled to summary judgment as to Plaintiff's recreation related claims. Although it appears Plaintiff did exhaust his claim related to being denied bathroom access while he was in the yard, resulting in his once soiling himself, he did not fully exhaust his claim regarding being denied recreation completely between mid-May 2016 and the filing of the complaint in mid-July 2016. The denial of exercise for short periods – such as periods between twenty-eight and ninety days – is an insufficiently severe deprivation to amount to cruel and unusual punishment under the Eighth Amendment. *See, e.g., Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (citing *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001), for the proposition that denials of recreation less than ninety days do not violate the constitution). As Plaintiff was allegedly denied recreation for less than two months between the cessation of

18

recreation in mid-May 2016 and his filing of his complaint in this matter, even had Plaintiff exhausted his denial of recreation claim, Defendants would be entitled to summary judgment as to that claim.

Turning to Plaintiff's bathroom related claims, Defendants moved for summary judgment as to that claim, which is raised against Defendant Patterson, only by arguing that the claims were not properly exhausted. Defendants did not move for judgment on the merits of that claim, but instead argued that it was not exhausted as to Patterson as Plaintiff mentioned only a non-Defendant officer in one of his inquiry forms, and mentioned multiple unnamed officers in the other. (*See* Document 5 attached to ECF No. 137 at 21, Document 9 attached to ECF No. 137 at 46.) Although Plaintiff did not mention Patterson specifically by name, and did mention another officer by name, in his ultimately exhausted grievance, Plaintiff stated that he was denied bathroom access during recreation by multiple officers and sergeants, one of whom could well have been Patterson. Under these circumstances, this Court cannot conclude that Plaintiff's bathroom access related claim is unexhausted, and Defendants motion is denied as to that claim.[6]

## G. Plaintiff's motion for summary judgment

On December 28, 2020, Plaintiff filed a purported summary judgment motion of his own. (ECF No. 172). In that motion, Plaintiff rehashes several discovery motions which were previously addressed by the magistrate judge in this matter, and presents no valid basis for an entry of judgment in his favor. (*Id.*) As Plaintiff's discovery contentions were previously addressed, and as Plaintiff has failed in his motion to set forth any valid basis for the entry of judgment in his favor, his summary judgment motion is denied.

---

[6] Because Defendants did not address that claim's merits specifically in their brief, this Court will permit Defendants to file a second summary judgment motion addressing the merits of the bathroom denial claim as to Defendant Patterson within thirty days.

19

## IV. CONCLUSION

In conclusion, Defendants' motion for summary judgment (ECF No. 137) is granted in part and denied in part, and Plaintiff's motion for summary judgment (ECF No. 172) is denied. An appropriate order follows.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE