**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTOINE LAVELLE SIMMONS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER GARY LANIGAN, et al.,<br><br>Defendants. | Civil Action No. 16-4215 (MAS) (DEA)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on the remaining Defendants' Second Motion seeking Summary Judgment in this prisoner civil rights matter. (ECF No. 178.) Plaintiff did not file direct opposition to the Motion. (*See* ECF No. 179.) For the following reasons, Defendants' Motion is granted and judgment shall be entered in favor of the remaining Defendants on all of Plaintiff's remaining claims.

**I.   BACKGROUND**

Plaintiff is a state prisoner currently serving a sentence of life without parole arising out of several Illinois murder convictions who, during the events at issue in this matter, was held in New Jersey State Prison under an interstate prisoner transfer compact. (*See* ECF No. 178-5; ECF No. 178-6.) In deciding Defendants' first motion for summary judgment, this Court summarized the factual background his claims as follows:

> On or about July 12, 2016, Plaintiff filed a complaint in which he sought to raise a litany of complaints against a number of employees of the New Jersey Department of Corrections arising out of a number of alleged incidents between April and July 2016 in which

Plaintiff alleges he was attacked, threatened, left without recreation time or the ability to use the restroom, and subjected to planted evidence and false disciplinary charges. Plaintiff also alleged that he was denied Due Process during two disciplinary hearings – the first relating to him being charged with the improper use of prescribed medication arising out of his cell being searched and a partially dissolved pill being discovered which Plaintiff believes was planted, and the second arising out of a guard finding a "sharpened" chicken bone in Plaintiff's cell which Plaintiff also contends was planted by guards.  Plaintiff further alleged that he was denied a haircut between April and July 2016, that various pieces of his property were lost, stolen, or given away by guards on several occasions, and that certain guards improperly seized a back brace he possessed after a prison doctor allegedly improperly determined that he no longer needed them.

As the majority of Plaintiff's claims are either unexhausted or fail to set forth a valid basis for relief for the reasons discussed below, this Court need only add a brief elaboration regarding Plaintiff's disciplinary proceedings.  On April 10, 2016, guards conducted a search of Plaintiff's cell and reported finding a "[r]ound white pill wrapped in white paper hidden inside a rol[l] of [t]oilet [p]aper," which was confiscated.  As Plaintiff had been prescribed Tylenol #4, a pain reliever which contains codeine, this pill was believed by jail officials to be one of these pills which Plaintiff was provided regularly by medical staff.  Plaintiff was charged with a misuse of authorized medications for allegedly secreting the pill.  He appeared for an initial hearing on April 13, 2016, initially with an inmate counsel substitute that he later refused, requested that he be permitted a polygraph that the hearing officers investigate several inmates who allegedly heard threats to Plaintiff by the officers who found the pill, and that the officers interview several prison staff to whom Plaintiff had complained regarding the officers in question previously but who were not present at the time of the search. Investigators spoke with the other inmates, who provided little in the way of useful, non-hearsay information, but the hearing officer declined to permit the interview of the other prison staff members to whom Plaintiff had previously complained as they were not present for the search and could provide no relevant testimony regarding what happened during the search – i.e., as to whether the pill was indeed planted in Plaintiff's cell.  The prison administrator also denied Plaintiff's request to be polygraphed as "no issues of credibility or new evidence" which would warrant a polygraph had presented themselves.

On April 22, 2016, Defendant Hearing Officer Cortes found Plaintiff guilty of the disciplinary infraction and imposed upon him

2

120 days loss of credits, 120 days of administrative segregation, 30 days loss of certain television, radio, and phone privileges, and 15 days loss of recreation privileges. Plaintiff was provided with a statement of reasons by the officer, in which Cortes explained that Plaintiff's request to interview jail staff not present had been denied as those individuals were not present and could provide no relevant testimony, the staff reports indicated that the pill was found in Plaintiff's cell, that Plaintiff had failed to rebut or discredit those reports, and that the testimony of other inmates had been either irrelevant or contained only hearsay. Plaintiff appealed, arguing that he had been denied the right to confront the witnesses against him notwithstanding the hearing officer having noted that Plaintiff did not request confrontation, that Plaintiff was improperly denied some requested witnesses and a polygraph, and that he received an excessive punishment. On April 22, 2016, Assistant Superintendent Robert Chetirkin upheld the imposed punishment and rejected Plaintiff's appeal, finding that Plaintiff had received the required procedural safeguards and the charges were well supported by the "preponderance of evidence."

Plaintiff's second disciplinary hearing arises out of the finding of a "sharpened" chicken bone in Plaintiff's cell on July 1, 2016. On that date, during a verbal argument between Plaintiff and a guard, the guard entered Plaintiff's cell after Plaintiff allegedly threatened him and found a "chicken bone sharpened to a point in his cell." Plaintiff was charged with threatening an[] officer and for possession of the chicken bone, of which he was ultimately found guilty of verbal abuse, a downgraded charge from the threat charge, and for possession of the bone on July 7, 2016. The hearing officer responsible for this decision was Defendant Morales Pitre. Plaintiff appealed, arguing that he was again denied his confrontation rights which was covered up when the officer stated that he did not request it in her decision, that the hearing officer refused to take some of his evidence in the form of certifications and affidavits, by discounting the testimony of one proposed witness as that witness was housed too far away to hear what occurred, and by not permitting him to request a polygraph. Plaintiff appealed, and the disciplinary findings were upheld by assistant superintendent Chetirkin on July 18, 2016, after this matter was filed.

(ECF No. 176 at 1-4, record citations omitted.)

In January 2020, Defendants filed their first summary judgment. (ECF No. 137.) On April 30, 2021, this Court granted that motion in part and denied it in part. (*See* ECF Nos. 176-77.) Following this Court's order and opinion, only three of Plaintiff's claims remain: Plaintiff's Due

3

Process claims related to his March and July 2016 disciplinary hearings raised against Defendants Cortes, Chetirkin, and Morales Pitre and Plaintiff's denial of bathroom access claim against Defendant Patterson. (*See* ECF No. 177 at 1-2.)

## II. **LEGAL STANDARD**

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

### III. DISCUSSION

**A. Plaintiff's Due Process Claims**

In their current motion, Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's Due Process claims related to his March and July 2016 disciplinary hearings because Plaintiff did not lose a protected liberty interest through those hearings, and no federal Due Process rights therefore attached to the hearings in question. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such interest without due process of law." *Burns v. Pa Dep't of Corr.*, 544 F.3d 279, 283-84 (3d Cir. 2008) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Thus, in order to have a valid claim for the denial of due process in relation to a prisoner disciplinary proceeding, a plaintiff must show that he had a constitutionally protected liberty or property interest, and that the prison disciplinary proceedings "failed to afford him sufficient process." *Id.* at 284. Generally speaking, a protected liberty interest will only arise where the punishment imposed is significantly more severe than those which are normally incident to prison life – such as the loss of earned credits which can be used to reduce his sentence. *See, e.g., Sandin v. Connor*, 515 U.S. 472, 486 (1995); *Deavers v. Santiago*, 243 F. App'x 719, 721 (3d Cir. 2007); *see also Stevenson v. Carroll*, 495 F.3d 62, 70 (2007). As the Supreme Court in *Sandin* made clear, even confinement in "administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical'

deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486). The Third Circuit has in turn held that even placement in solitary confinement as an administrative punishment for a period of up to seven months is insufficient to establish a cognizable liberty interest. *Id.*; *see also Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013).

Defendants argue that Plaintiff did not lose a protected liberty interest at either of his disciplinary hearings, and thus has no federally protected Due Process rights sufficient to support a claim under § 1983 for the alleged procedural failings at those hearings. Following his March 2016 hearing, Plaintiff was sanctioned with the loss of 120 days of commutation credits and 120 days of administrative segregation. (ECF No. 178-6 at 89.) For his July hearing, Plaintiff was in turn sanctioned with 180 days of administrative segregation and 180 days of loss of commutation time. (ECF No. 178-7 at 22.) As both periods of administrative segregation are significantly less than the seven months which the Third Circuit has found to be insufficient to support a protected liberty interest, Plaintiff's placement in administrative segregation for each of the two hearings fails to provide a basis for a Due Process claim. *Smith*, 293 F.3d at 653; *see also Huertas*, 533 F. App'x at 66.

The loss of commutation credits is more complex. Generally, the loss of commutation credits under the applicable New Jersey statute will amount to a state created liberty interest as New Jersey has created an entitlement to such credits and those credits have a direct impact on the length of a prisoner's sentence. *See, e.g., Thompson v. Maurer*, No. 04-5140, 2006 WL 517686, at *4-5, 4 n. 2 (D.N.J. Mar. 2, 2006) (*citing Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). The New Jersey statute which provides for the entitlement of a prisoner to earn commutation credits, however, limits the eligibility for credits only to those sentences with "both a minimum and maximum term of years," and the statute simply does not apply to life sentences. *See, e.g., Vaughn*

*v. N.J. Dep't of Corr*, 2021 WL 5045738, at *1 (N.J. App. Div. Nov. 1, 2021). Thus, even if New Jersey had the ability to confer a benefit on an out of state prisoner and in some way reduce the sentence entered by an entirely different state, the New Jersey statute would provide Plaintiff, who is serving a sentence of life without parole which has neither a minimum or maximum term of years sentence, no entitlement to credits towards his sentence, and Plaintiff has no state created interest in the accrual or loss of credits which can by definition have no impact upon him. *Id.*; *see also* 730 ILCS 5/3-6-3(2.2) (Illinois life prisoners "shall receive no sentence credit"). Plaintiff's "loss" of commutation credits in which he had no state created interest insomuch as he was not entitled to receive them in any event therefore provides no basis for finding that Plaintiff had a protected liberty interest in the outcome of his prison disciplinary proceedings. As Plaintiff had no liberty interest in the outcome of those proceedings, he had no entitlement to any federally protected Due Process rights in those proceedings. Judgement must therefore be entered in favor of Defendants Chetirkin, Morales Pitre, and Cortes as to Plaintiff's Due Process claims relating to his March and July 2016 disciplinary proceedings.

### B. Plaintiff's bathroom denial claim

Defendant Patterson in turn argues that he is entitled to summary judgment on the merits of Plaintiff's claim that he was denied bathroom access because the period for which Plaintiff was denied bathroom use – three hours (*see* ECF No. 178-7) – was too short to serve as the basis for a valid claim for relief under the Eighth Amendment. "As a general matter, the denial of access to a lavatory has been held to offend the Eighth Amendment only where it is unconscionably long or where it constitutes an ongoing feature of an inmate's confinement." *Cook v. Wetzel*, No. 13-6575, 2015 WL 2395390, at *5 (E.D. Pa. May 20, 2015) (citing *Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992), *superseded by statute as recognized in Siluk v. Merwin*, 783 F.3d 421, 435 n. 77 (3d Cir.

2015)). A denial of access to a restroom will therefore only implicate an Eighth Amendment violation where the denial is so extended or severe that it "implicates the physical or psychological health of the inmate." *Id.* Generally, a denial of bathroom access for a mere few hours is insufficient to meet this hurdle. *Id.* at *5 (denial of bathroom access for eight hours did not violate Eighth Amendment even where plaintiff alleged "damage to their bladders"); *see also Evans-Salter v. Wetzel*, No. 19-950, 2020 WL 5819764 at *3 (M.D. Pa. Sept. 30, 2020) (collecting cases finding no constitutional violation for denial of bathroom access for periods between twenty minutes and eight hours at a time); *Shoffler v. City of Wildwood*, No. , 2019 WL 4165305, at *12 (D.N.J. Sept. 3, 2019) (denial of bathroom access for a few hours insufficient to violate even the greater protections afforded to detainees not yet convicted). As Plaintiff claimed only to have been denied access to the bathroom for a period of up to three hours while in the prison recreation facilities, and Plaintiff has not shown how so short a deprivation could have had any lasting physical or psychological effect upon him, his allegations are insufficient to support a finding of an Eighth Amendment violation and Defendant Patterson is therefore entitled to judgment on Plaintiff's bathroom denial claim.[1]

---

[1] Because Defendants are entitled to judgment for the reasons set forth in this opinion, this Court need not and does not address Defendants remaining arguments, many of which are either similar to those addressed here or rehash issues already addressed in this Court's prior opinion.

## IV.　CONCLUSION

In conclusion, Defendants' Second Motion for Summary Judgment (ECF No. 178) is granted and judgment shall be entered in favor of the remaining Defendants on all of Plaintiff's remaining claims.  An appropriate order follows.

_/s/ Michael A. Shipp_
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
